IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS BENJAMIN WARD, | |
| Plaintiff, | No. CIV S-10-1942 DAD P |
| vs. | |
| SHERMAN CHAMPEN, et al., | <u>ORDER AND</u> |
| Defendants. | <u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion for summary judgment brought on behalf of defendants Champen, Andreasen, Bick, and Kimura-Yip pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion. Defendants have filed a reply.

**BACKGROUND**

Plaintiff is proceeding on an amended complaint against defendants Nurse Champen, Dr. Andreasen, Dr. Bick, and Deputy Director Kimura-Yip. Therein, plaintiff alleges that defendant Champen failed to provide him with adequate medical care in connection with a painful injury he suffered to his left shoulder and back. He also alleges that defendants Andreasen, Bick, and Kimura-Yip failed to provide him with adequate medical care when they

denied him relief through the inmate appeals process.  Plaintiff alleges that he ultimately received an MRI, revealing that he had a severely damaged left rotator cuff.  According to plaintiff, seventeen months after he first saw defendant Champen, he finally received surgery for his injury.  Plaintiff claims the defendants have violated his rights under the Eighth Amendment and the California Government Code and requests monetary damages.  (Am. Compl. at 3-7 & Exs. A & B.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

/////

1       If the moving party meets its initial responsibility, the burden then shifts to the
2 opposing party to establish that a genuine issue as to any material fact actually does exist. See
3 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
4 establish the existence of this factual dispute, the opposing party may not rely upon the
5 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
6 form of affidavits, and/or admissible discovery material, in support of its contention that the
7 dispute exists.  See Fed. R. Civ. P. 56(c) & (e); Matsushita, 475 U.S. at 586 n.11.  The opposing
8 party must demonstrate that the fact in contention is material, i.e., a fact that might affect the
9 outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
10 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
11 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
12 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
13 1436 (9th Cir. 1987).

14       In the endeavor to establish the existence of a factual dispute, the opposing party
15 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
16 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
17 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
18 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
19 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
20 committee's note on 1963 amendments).

21       In resolving the summary judgment motion, the court examines the pleadings,
22 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
23 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
24 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
25 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
26 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

## OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.   The Eighth Amendment and Inadequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

1  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94
2  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard
3  to medical care, however, "the indifference to his medical needs must be substantial.  Mere
4  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."
5  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at
6  105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere
7  negligence in diagnosing or treating a medical condition, without more, does not violate a
8  prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate
9  indifference is "a state of mind more blameworthy than negligence" and "requires 'more than
10 ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835
11 (quoting Whitley, 475 U.S. at 319).

12         Delays in providing medical care may manifest deliberate indifference.  Estelle,
13 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in
14 providing care, a plaintiff must show that the delay in treatment was harmful.  See Berry v.
15 Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v.
16 Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th
17 Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).
18 In this regard, "[a] prisoner need not show his harm was substantial; however, such would
19 provide additional support for the inmate's claim that the defendant was deliberately indifferent
20 to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d
21 at 1060.

22         Finally, mere differences of opinion between a prisoner and prison medical staff
23 or between medical professionals as to the proper course of treatment for a medical condition do
24 not give rise to a § 1983 claim.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,
25 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662
26 F.2d 1337, 1344 (9th Cir. 1981).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendants' Statement of Undisputed Facts and Evidence</u>

Defendants' statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by defendants Champen, Bick, and Kimura-Yip. It is also supported by citations to a declaration from Deputy Attorney General Price and attached copies of plaintiff's central file documents and medical records. The evidence submitted to the court by the defendants establishes the following.

Plaintiff was a state prisoner at California Medical Facility between March 2009 and January 2010. On March 23, 2009, defendant Champen, a nurse practitioner, first saw plaintiff for his complaints of pain in the left shoulder. Defendant Champen told plaintiff to take Tylenol and counseled him on the fact that he had not been taking Tylenol as previously prescribed for his shoulder pain. Defendant Champen also ordered an x-ray of plaintiff's shoulder. Plaintiff requested an egg-crate mattress, but defendant Champen informed plaintiff that he did not qualify for one. Subsequently, a doctor also determined that plaintiff did not qualify for an egg-crate mattress. On March 30, 2009, plaintiff underwent an x-ray for his shoulder, which detected no abnormalities. (Defs.' SUDF 2, 6-10, Champen Decl. & Ex. A., Price Decl. Exs. A & C.)

Defendant Champen saw plaintiff on numerous subsequent occasions. On August 25, 2009, defendant Champen saw plaintiff and ordered him Ibuprofen (600 mg) for shoulder discomfort. On September 1, 2009, defendant Champen saw plaintiff and ordered him an analgesic balm to rub into his shoulder as needed. On September 3, 2009, defendant Champen examined plaintiff for shoulder pain and instructed him to stop exercising for two months to allow his shoulder to heal; defendant Champen noted that plaintiff was scheduled for physical therapy and had been referred for an MRI, which took place on September 9, 2009. On September 17, 2009, defendant Champen examined plaintiff and discussed the MRI results with him. Defendant Champen explained to plaintiff at that time that there was not a tear but

1  degenerative changes to plaintiff's shoulder.  Plaintiff complained that the Ibuprofen was not
2  working, so defendant Champen ordered him Naproxen, an anti-inflammatory stronger than
3  Ibuprofen, and confirmed that plaintiff was on the list for a physical therapy consult.  On October
4  26, 2009, defendant Champen examined plaintiff once more.  Plaintiff complained of shoulder
5  pain again, so defendant Champen ordered him Methadone, a stronger medication than
6  Naproxen, and discussed an orthopedic consultation for plaintiff.  On January 7, 2010, defendant
7  Champen saw plaintiff for the last time.  At that time defendant Champen discussed plaintiff's
8  symptoms with him and ordered an increase in his Methadone prescription from 5 mg to 10 mg.
9  An orthopedic consult was previously ordered on October 26, 2009, but plaintiff was at that time
10 still awaiting a scheduled appointment.  (Defs.' SUDF 12-18, Champen Decl. & Ex. A.)

11             According to defendants declarations, evaluation and treatment of a shoulder
12 injury can take up to a year because: (1) immediately after sustaining the injury and having a
13 physical examination, the protocol is to prescribe the patient pain medication and allow two to
14 three months of recovery time for the injury to heal; (2) if the injury has not healed within a few
15 months, another physical examination should be conducted and an x-ray taken; (3) if the x-ray
16 report is negative, but the patient still presents with pain, the patient should be prescribed further
17 pain medication and given additional time for the injury to heal; (4) if the patient continues to
18 complain of pain and/or functional limitations, additional imaging such as an MRI may be
19 performed.  If the MRI shows an injury amenable to surgical repair, then referral to a surgeon
20 may be appropriate.  Depending on the surgical opinion and the patient's underlying health
21 status, surgery may or may not be recommended.  (Defs.' SUDF 19, Champen Decl., Bick Decl.)

22             In January of 2010, plaintiff was transferred from California Medical Facility to
23 California State Prison, Sacramento.  Following his transfer, plaintiff saw an orthopedic surgeon
24 who treated him with a steroid injection and an anesthetic agent and discussed with plaintiff
25 non-urgent surgery.  Plaintiff eventually underwent surgery for his shoulder condition on August
26 /////

1  16, 2010.  At that time the surgeon confirmed that plaintiff's rotator cuff was intact.  (Defs.'
2  SUDF 20, Bick Decl. & Ex. B, Price Decl. & Ex. C.)
3              Plaintiff filed an inmate appeal regarding defendant Champen's alleged failure to
4  adequately treat his shoulder condition.  Defendants Andreasen, Bick, and Kimura-Yip reviewed
5  and/or responded to plaintiff's appeal at the ascending levels of the inmate appeals process.
6  (Defs.' SUDF 3-5, Bick Decl. & Ex. A, Kimura-Yip Decl. & Ex. A, Price Decl. & Ex. B.)
7  II.  Defendants' Arguments
8              Defense counsel argues that defendant Champen is entitled to summary judgment
9  in his favor on plaintiff's Eighth Amendment claims because there is no evidence before the
10 court indicating that defendant Champen was deliberately indifferent to plaintiff's medical needs.
11 Specifically, counsel argues that defendant Champen relayed plaintiff's medical requests to
12 appropriate prison medical personnel and recommended an x-ray of plaintiff's shoulder.
13 According to counsel, defendant Champen also ordered plaintiff pain medication of increasing
14 strength in response to plaintiff's subjective complaints of pain.  (Defs.' Mem. of P. & A. at 6.)
15             Defense counsel also argues that defendants Andreasen, Bick, and Kimura-Yip are
16 entitled to summary judgment in their favor because plaintiff has no constitutional right to a
17 specific grievance procedure.  In this regard, counsel argues that while defendants reviewed and
18 responded to plaintiff's inmate appeals in a manner which the plaintiff disagreed, this
19 disagreement alone does not give rise to a cognizable constitutional claim against those
20 defendants.  In addition, counsel argues that these defendants cannot be held liable under a theory
21 of respondeat superior liability, nor can plaintiff establish the defendants' liability under § 1983
22 for deliberate indifference because their conduct did not even rise to the level of negligence.  At
23 most, according to defense counsel, plaintiff had a mere difference of opinion with defendants.
24 (Defs.' Mem. of P. & A. at 6-7.)
25             Finally, defense counsel argues that all of the defendants are entitled to summary
26 judgment in their favor based upon qualified immunity because the undisputed facts show that

they did not violate any of plaintiff's clearly established constitutional rights.  Defense counsel contends in this regard that a reasonable person in defendants' positions could have believed that their conduct was lawful.  (Defs.' Mem. of P. & A. at 8-9.)

III. Plaintiff's Opposition

       Plaintiff's opposition to defendants' motion for summary judgment is supported by his own declaration signed under penalty of perjury and by a response to defendants' statement of undisputed facts.  Plaintiff has also submitted objections to the evidence offered by defendants in support of their motion for summary judgment.

       Plaintiff argues that defendant Champen failed to order him pain medication and a shoulder brace, refer him for an MRI, and schedule him to see a specialist.  According to plaintiff, defendant Champen also refused to order him an egg-crate mattress, cushion pillow, or anything else that would have helped alleviate his pain.  Plaintiff contends that defendant Champen took no significant actions on his behalf.  At most, plaintiff argues, defendant Champen followed-up or merely continued Nurse Warhover's orders.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 5, Pl.'s Decl. & Ex. B.)

       Plaintiff argues that As to defendants Andreasen, Bick, and Kimura-Yip, may be held liable for their failure to act on his behalf.  Plaintiff contends that these defendants denied his inmate appeal and prevented him from obtaining any relief for his pain.  Plaintiff contends that he suffered unnecessarily for seventeen months before he finally received surgery on his painful shoulder.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 6.)

       Finally, plaintiff argues that defendant Champen is not entitled to qualified immunity for his failure to provide plaintiff with adequate medical care because defendant Champen refused to order plaintiff pain medication and a brace or refer plaintiff for an MRI.  Similarly, plaintiff contends that defendants Andreasen, Bick, and Kimura-Yip are not entitled to qualified immunity because they refused to act on his behalf.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 7-8.)

IV. <u>Defendants' Reply</u>

In reply, defense counsel contends that, at best, plaintiff's evidence demonstrates a mere disagreement with defendant Champen's medical opinion and treatment plan. Counsel also contends that plaintiff's evidence fails to create a triable issue of fact in support of any of his claims against defendants Andreasen, Bick, and Kimura-Yip. According to defense counsel, as a matter of law plaintiff does not have a constitutional entitlement to a specific grievance procedure and plaintiff has not shown that these defendants were deliberately indifferent to his medical needs. (Defs.' Reply at 2-4.)

**ANALYSIS**

I. <u>Plaintiff's Serious Medical Needs</u>

As an initial matter, the parties do not appear to dispute that based upon the evidence presented by the parties in connection with the pending motion a reasonable juror could conclude that plaintiff's shoulder and back injury constitutes an objective, serious medical need and the undersigned so finds. See <u>McGuckin</u>, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); <u>Canell v. Bradshaw</u>, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose.").

Specifically, plaintiff's largely undisputed medical history and the observations and treatment recommendations made by defendant Champen, other prison medical personnel, and outside specialists compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain." <u>McGuckin</u>, 974 F.2d at 1059. Accordingly, resolution of defendants' motion for summary judgment hinges on whether, based upon the evidence before the court on summary judgment, a

1 rationale jury could conclude that the defendants responded to plaintiff's serious medical needs
2 with deliberate indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.
3 II.  Defendants' Response to Plaintiff's Serious Medical Needs
4              The court finds that defendant Champen has borne his initial responsibility of
5 demonstrating that there is no genuine issue of material fact with respect to the adequacy of the
6 medical care provided to plaintiff.  As noted above, plaintiff alleges that defendant Champen
7 failed to provide him with adequate medical care in connection with his shoulder and back
8 injury.  Defendants' evidence establishes the contrary.
9              Specifically, defendants' evidence establishes that defendant Champen first saw
10 plaintiff for complaints of pain to the left shoulder on March 23, 2009.  During that visit, the
11 defendant counseled plaintiff to take Tylenol as prescribed for his pain.  Defendant Champen
12 also ordered an x-ray of plaintiff's shoulder.  On March 30, 2009, plaintiff underwent an x-ray,
13 which showed no abnormalities.  Subsequently, defendant Champen treated plaintiff on
14 numerous occasions.  For example, defendant Champen ordered plaintiff pain medication in
15 increasing strength in response to his complaints of shoulder pain.  He ordered plaintiff Ibuprofen
16 when plaintiff complained that Tylenol was inadequate for the pain; the defendant ordered
17 Naproxen for plaintiff when he complained the Ibuprofen was not strong enough; defendant
18 Champen ordered plaintiff Methadone when he complained the Naproxen was insufficient; the
19 defendant increased plaintiff's Methadone when plaintiff complained that the original dosage
20 was not enough to address the pain he was experiencing.  Defendant Champen also repeatedly
21 examined plaintiff, advised him about his condition, discussed his test results with him, and
22 ordered an analgesic balm for him to rub into his shoulder as needed.  Finally, defendant
23 Champen followed-up on orders from other medical personnel with regard to the physical
24 therapy referral and an orthopedic consultation for plaintiff.  (Champen Decl. & Ex. A.)
25              Given the evidence submitted by defendant Champen in support of his pending
26 motion for summary judgment, the burden shifts to plaintiff to establish the existence of a

1 genuine issue of material fact with respect to his inadequate medical care claims.  As noted
2 above, to demonstrate a genuine issue, the opposing party "must do more than simply show that
3 there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole
4 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue
5 for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

6 Here, the court has considered plaintiff's opposition to the pending motion for summary judgement and his amended complaint.  On defendants' motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant Champen responded to his serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.

13 Specifically, in his opposition to defendants' motion for summary judgment, plaintiff contends that the court should deny the pending motion because defendant Champen failed to provide him with the medical care that plaintiff believed was necessary under the circumstances.  The court understands plaintiff's position.  In retrospect, one can certainly question the effectiveness of the course of treatment chosen by Nurse Champen for plaintiff's degenerative shoulder condition which progressed from Ibuprofen to analgesic balm to Naproxen and ultimately to Methadone before plaintiff was transferred to another institution where, after several months, he ultimately received surgery.[1]  However, as a matter of law, a mere difference of opinion between a prisoner and prison medical staff as to the proper course of medical

---

[1] Naproxen is an anti-inflammatory commonly used for the the reduction of pain, fever, inflammation and stiffness caused by conditions such as tendinitis.  Methadone, on the other hand, is a synthetic opioid used as a maintenance anti-addictive for use in patients with opioid dependency and in managing severe, chronic pain.  Certainly one could argue from this evidence that defendant Champen pursued a course of medical treatment aimed merely at masking plaintiff's pain instead of meaningfully treating his underlying medical condition.  However, argument does not suffice for evidence at the summary judgment stage.  Moreover, even if such evidence were presented, it may well suggest nothing more than negligence.

treatment does not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not constitute cruel and unusual punishment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."). The evidence before the court establishes that defendant Champen was providing plaintiff with medical treatment over a lengthy course of time. Plaintiff may have had good reason for disagreeing with that course of treatment. However, the court is mindful that, "[d]eliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Toguchi, 391 F.3d at 1060.

     In addition, in opposing summary judgment plaintiff has not come forward with evidence establishing that the course of treatment defendant Champen chose for him was medically unacceptable under the circumstances. Nor has plaintiff come forward with evidence showing that defendant Champen chose the particular course of treatment in conscious disregard of an excessive risk to plaintiff's health. See Farmer, 511 U.S. at 837. Finally, to the extent that plaintiff is claiming that he experienced unreasonable delay in receiving medical treatment, he has not presented evidence showing that defendant Champen caused the claimed delay or that plaintiff suffered any substantial harm as a result of any such delay. See Berry, 39 F.3d at 1057; Wood, 900 F.2d at 1335. Accordingly, defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim against defendant Champen should be granted.[2]

/////

---

[2] As noted above, plaintiff has submitted "objections" to some parts of defendants' declarations. Plaintiff's objections are overruled. As treating medical personnel and medical personnel who have reviewed plaintiff's medical records and are familiar with his case, their testimony constitutes relevant and admissible evidence.

14

As to defendants' Andreasen, Bick, and Kimura-Yip, the court finds that these defendants have also borne their initial responsibility of demonstrating that there is no genuine issue of material fact with respect to plaintiff's claims against them. As noted above, plaintiff alleges that these defendants failed to provide him with adequate medical care in connection with his shoulder and back injury when they denied him relief through the inmate appeals process.

Insofar as plaintiff is complaining about these defendants' role in the inmate appeals process, he fails to state a cognizable claim. It is well established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). See also, e.g., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203 at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788 at *6-7 (E.D. Cal. Dec. 17, 2009) (plaintiff's allegations that prison officials failed to timely process his inmate appeals failed to a state cognizable under the Fourteenth Amendment); Towner v. Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations that prison officials screened out his inmate appeals without any basis failed to indicate a deprivation of federal rights).

Moreover, to the extent plaintiff is complaining that these defendants failed to adequately supervise defendant Champen, he has also failed to state a cognizable claim. Section 1983 requires that there be an actual connection or link between the actions of the defendant and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v.

15

Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  The Ninth Circuit has recently reaffirmed that a supervisory defendant may be held liable under § 1983 only "'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  Starr v. Baca, __ F.3d __, ___, 2011 WL 2988827, at *4 (9th Cir. July 25, 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).  Here, plaintiff has not alleged, let alone established through evidence submitted in opposition to the pending summary motion, that these defendants were personally involved in his medical care.  Nor has plaintiff demonstrated a sufficient causal connection between these defendants' conduct and any alleged constitutional violation.

Finally, in light of the conclusion reached above that defendant Champen is entitled to summary judgment in his favor on plaintiff's deliberate indifference claim, defendants Andreasen, Bick, and Kimura-Yip, who merely responded to plaintiff's inmate appeals regarding his medical care, likewise cannot be found to have been deliberately indifferent to plaintiff's serious medical needs.  To the extent that plaintiff disagrees with the medical opinions of these defendants reflected in their responses to his inmate appeals, again, as a matter of law, a mere difference of opinion between a prisoner and prison medical staff as to the proper course of medical care does not give rise to a cognizable § 1983 claim.  See Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344.

Accordingly, defendants' motion for summary judgment with respect to plaintiff's claims against defendants Andreasen, Bick, and Kimura-Yip should also be granted.[3]

**OTHER MATTERS**

In his opposition to defendants' motion for summary judgment, plaintiff has moved for relief under Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), asserting that

---

[3] The parties have also briefed the issue of whether the defendants are entitled to summary judgment in their favor based upon qualified immunity.  In light of the recommendations set forth above, however, the court will not reach the merits of those qualified immunity arguments.

he would like the time and opportunity to conduct additional discovery and to depose defendant Champen and Dr. Casey, his orthopedic surgeon. Plaintiff is advised that he has failed to make the requisite showing that he is entitled to relief under Rule 56(d). "The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists." Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987). See also Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir. 1986) (holding that the party opposing summary judgment "has the burden under Rule 56[d] to show what facts [he] hopes to discover to raise an issue of material fact"). Here, plaintiff has failed to demonstrate that there are specific facts he hopes to discover that could raise an issue of material fact in this case. Harris v. Duty Free Shoppers Ltd. P'ship, 940 F.2d 1272, 1276 (9th Cir. 1991); Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991). Accordingly, plaintiff's Rule 56(d) motions will be denied.

Plaintiff has also filed with the court a declaration that he drafted and that Attorney Justin L. Ward purportedly signed. Therein, Attorney Ward declares that he is willing to become the attorney of record for plaintiff in this case for the sole purpose of conducting the depositions of the defendants in this matter. On July 29, 2011, the court denied plaintiff's motion to certify Mr. Ward as his attorney for this purpose. At that time the court advised plaintiff that, under Local Rule 182, "no attorney may participate in any action unless the attorney has appeared as an attorney of record." See Local Rule 182(a)(1). The court's order was without prejudice to Attorney Ward filing a motion to substitute in as plaintiff's counsel of record in this action if he wished to do so. Attorney Ward has not sought leave of court to substitute in as counsel of record for plaintiff in this action. In addition, neither plaintiff nor Attorney Ward has made any showing as to why the court should extend the time for discovery. The complaint in this action was filed on July 22, 2010 and the court's discovery and scheduling order setting the deadlines for the completion of discovery was issued back on November 24,

/////

2010. Accordingly, the court will disregard plaintiff's declaration (Doc. No. 37) filed with the court on August 31, 2011.

Finally, to the extent that plaintiff has asserted any state law claims in his amended complaint, a district court may decline to exercise supplemental jurisdiction over a claim "if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). See also Binder v. Gillespie, 184 F.3d 1059, 1066 (9th Cir. 1999). The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity. Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997). In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s] often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Acri, 114 F.3d at 1001 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)). If these findings and recommendations are adopted and defendants' motion for summary judgment is granted, all federal claims over which this court has original jurisdiction will be dismissed. The balance of relevant factors in this case points toward declining to exercise jurisdiction over any remaining state law claims. See Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). Under these circumstances, the undersigned will recommend that plaintiff's state law claims be dismissed without prejudice to their refiling in state court.

## CONCLUSION

IT IS HEREBY ORDERED that:

1. Plaintiff's motions pursuant to Rule 56(d) (Doc. Nos. 36 & 40) are denied;

2. Plaintiff's declaration (Doc. No. 37) is disregarded; and

3. The Clerk of the Court is directed to randomly assign a United States District Judge to this action.

/////

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (Doc. No. 30) be granted;

2. Plaintiff's state law claims be dismissed without prejudice to their refiling in state court;

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 29, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
ward1942.57